### STARKS v. LOFTUS. (No. 8222.)

(Court of Civil Appeals of Texas. Galveston. Nov. 24, 1922. Rehearing Denied March 8, 1923.)

**1. Alteration of instruments ⬧12, 29—Evidence held sufficient to show alterations in deed made with consent of grantor, and did not affect validity.**

Evidence in an action of trespass to try title *held* sufficient to show that alterations of spelling of grantee's name in deed, made by a notary acting for grantee, were made with the knowledge and consent of the grantor, and could not affect the validity of the deed, notwithstanding the alterations may have been made after the deed was signed, acknowledged, and delivered by grantor.

**2. Alteration of instruments ⬧2—Whether alteration in instrument will void it depends upon materiality of change.**

The effect of any alleged change in an instrument depends first upon the character of the change, whether material or immaterial; any alteration which changes the legal identity or character of the instrument is a material change, which will invalidate the instrument against parties not consenting to it.

**3. Alteration of instruments ⬧17—A rule that material alteration voids instrument should not defeat title honestly acquired.**

The purpose of the rule that a material change in an instrument, without the consent of the parties thereto, will invalidate the instrument, is to prevent fraud, but the rule should not be invoked to defeat a title honestly and fairly acquired, and free from any suspicion of fraud.

**4. Appeal and error ⬧1177(5)—Judgment may be rendered on appeal on evidence improperly excluded.**

Ordinarily, when a plaintiff's right to recover depends on wrongfully excluded evidence, upon a reversal of the judgment against him by the appellate court, the latter would not be authorized to render judgment in plaintiff's favor upon the excluded evidence, but where the erroneously excluded evidence is a deed showing title in plaintiff, is part of the record, and there is nothing to indicate that the case was not fully developed upon all of its issues, there is no necessity for remanding the case for retrial.

Appeal fom District Court, Harris County; J. D. Harvey, Judge.

Action by Will Starks against T. F. Loftus. Judgment for defendant, and plaintiff appeals. Judgment reversed, and rendered for plaintiff.

Harry Holmes, of Houston, for appellant. Louis, Campbell & Nicholson and W. A. Combs, all of Houston, for appellee.

PLEASANTS, C. J. This is an action of trespass to try title. The suit was originally brought by Daisy Starks, joined by the appellant, who was her husband, against the appellee. Pending the trial in the court below, Daisy Starks died, and appellant, who inherited her title, by an amended petition, became the sole plaintiff.

The land sued for is described as follows:

"Six acres of land out of a certain thirty-one (31) acres of land out of the P. W. Rose grant, known as the Noble Grant tract, in Harris county, Texas, described as follows: Beginning at an inner or L corner of the Margaret Jones tract out of said Noble Grant tract of 31 acres, being also the southwest corner of the tract of land herein described; thence east 304 feet along a fence to corner; thence north along the fence 644 feet to corner; thence west 394 feet to corner in the east fence of Johnson tract; thence south along fence 664 feet to the place of beginning, containing six acres of land. Described in the deed from Lucindy Grant to Daisy G. Starks, recorded in volume 316, p. 361, of the Deed Records of Harris county, Texas."

The amended petition, after describing the land as above set out and specially pleading title by limitation of three, five, and ten years, contains the following allegations:

"Plaintiff would further show:

"That on or about October 20, 1913, Lucinda Grant executed and delivered to Daisy G. Starks a certain deed of conveyance, the description of which reads as follows: All of that certain tract or parcel of land known as a part of the P. W. Rose league in Harris county, Texas, said land herein conveyed being six (6) acres out of 31 acres conveyed to Noble Grant (now deceased) by Brady, Sr., for himself and as guardian for Brady, Jr., said deed recorded in Book 26, p. 220, Records of Harris county, Texas, and more fully described as follows, to wit: Beginning at a double elm tree standing on an island in Brays bayou on the west line of Eggerts fifty acres north 37 varas to a stake from which a pin oak marked $\frac{3}{4}$ bears west 10 varas and another pin oak marked B, facing corner; thence west 225 varas to a stake on the south

side of Brays bayou; thence south 775 varas to a stake on the south line of the Rose league; thence east 225 varas along said line to a stake; thence north 775 varas to Brays bayou or the place of beginning, the six acres herein conveyed to be located in the above-named 31 acres wherever Daisy G. Starks may choose.

"That thereupon the said Daisy G. Starks and this plaintiff, her then husband, in accordance with the provisions of said deed, did choose and elect to take and did take the six acres of land first herein described out of said tract described in said deed and did have the same surveyed and laid out upon the ground, inclosed the same by fence and took actual possession thereof, and since said time have been in the actual possession thereof, cultivating, using, and enjoying the same as their own, under and by virtue of said deed, the said Daisy G. Starks and this plaintiff have improved and constructed valuable improvements thereon.

"That by virtue of said election and appropriation of said property by said Daisy G. Starks and this plaintiff, the effect of said deed was to convey to Daisy G. Starks the six acres aforesaid."

These allegations are followed by allegations charging defendant with unlawful entry upon plaintiff's premises, with tearing down and destroying the fences, and otherwise injuring the property, and by prayer for temporary injunction restraining defendant, during the pendency of the suit, from a continuance of the wrongful acts charged against him—

"and that upon final hearing hereof that plaintiff have judgment for title to and possession of said premises, for his damages, writ of possession, costs of court, and such other and further relief, general and special, to which he may show himself entitled. But in the alternative, in case the court should find that plaintiff is mistaken as to the effect of said deed, or that same does not convey to plaintiff's the six acres of land hereinbefore mentioned, or that plaintiff has not elected to take said six acres under said deed, then in that event plaintiff alleges that he is the owner of an undivided six acres interest in and to the tract of land described in said deed, and in this connection plaintiff alleges that defendant claims to own the balance of said tract, and, so far as plaintiff is informed and believes, defendant is the owner thereof, and plaintiffs pray that, upon a trial hereof, if the court should find that the effect of said deed is to convey to Daisy G. Starks only an undivided six acres interest in and to said tract of land, then plaintiff prays that he may have judgment for partition of said land and premises; that commissioners be appointed and writ of partition issue and for possession of that portion which by the judgment of the court may be ascertained and declared the property of plaintiff, for writ of possession, costs of court and such other and further relief, special and general, in law and in equity, to which he may show himself justly entitled. The court, having heretofore granted a writ of injunction herein on February 1, 1918, plaintiff prays that the same be continued in full force and effect during the pendency of this suit and, upon final hearing hereof, that same be made permanent, as in duty bound will ever pray."

The defendant's answer contains a general demurrer, a general denial, and plea of not guilty, and the following special plea, which was sworn to by the defendant:

"Further answer, if necessary, this defendant denies that the plaintiff, Daisy G. Starks, has a valid deed from Lucindy Grant for the six (6) acres described in plaintiff's petition, but says that he is informed, and upon such information believes and alleges the fact to be, that the deed from Lucindy Grant to said plaintiff, which is recorded in volume 316, p. 361, of the Deed Records of Harris county, Texas, and is referred to in plaintiff's petition, was not signed by the said Lucindy Grant, or by or with her authority, and that the purported signature of the said Lucindy Grant thereto was and is a forgery."

He also pleaded title to the land in controversy and prayed for judgment against the plaintiff for the title and possession thereof.

The trial in the court below without a jury resulted in a judgment in favor of defendant for the title and possession of the land.

Lucindy Grant is the common source of title. Appellee claims under a conveyance from the devisees of Lucindy Grant, deceased, whose will was duly probated by the county court of Harris county. By the terms of the will the tract of 31 acres of land, of which the land in controversy is a part, was devised to the grantors of appellee.

Upon the trial, appellant offered in evidence the original deed from Lucindy Grant to Daisy Starks referred to in his petition. Appellee objected to its introduction, on the ground that "both the appearance of the deed and the testimony offered by plaintiff showed that the deed had been altered in material respects after its execution, and because there was no pleading on the part of plaintiff justifying the admission of said deed, and because the same was irrelevant and immaterial for any purpose and was prejudicial," which objection was overruled by the court and the deed admitted in evidence.

[1] After hearing the evidence introduced by both parties, the court, on motion of the appellee, excluded the deed from evidence and rendered judgment as before stated. At the request of appellant, the trial judge filed conclusions of fact and law, which contain the following:

"The plaintiff, Will Starks, claims under an alleged deed from Lucindy Grant to Daisy G. Starks, dated and acknowledged October 20, 1913, and filed for record November 18, 1913, the said Daisy G. Starks during the pendency of this suit, having died intestate, leaving a son as her only heir at law, and the plaintiff, Will Starks, who was the husband of said Daisy G. Starks, having acquired his right, title, claim and interest by deed. The original deed claimed under by the plaintiff was offered in evidence and upon its face reads as follows:

" 'Know all men by these presents: That I, Lucindy Grant (feme sole), of Harris county, Texas, for and in consideration of the sum of ten ($10.00) and for love and affection) dollars to me in hand paid by Daisie G. Starks, have granted, sold and conveyed, and by these presents do grant, sell and convey, unto the said Daisy Starks all of that certain tract or parcel of land, known as a part of the W. P. Rose league in Harris county, Texas, said land herein conveyed being six (6) acres out of 31 acres conveyed to Noble Grant (now deceased) by Brady, Sr., for himself and as guardian for Brady, Jr., said deed recorded in Book 26, page 220, described as follows, to wit: Beginning at a double elm tree standing on an island in Brays bayou, on the W. line of Eggerts fifty acres, N. 37 vrs. to a stake from which a pin oak marked B. facing cor.; thence W. 225 vrs. to a stake on the south side of Brays bayou; thence south 775 vrs. to a stake on the south line of the Rose league; thence east 225 vrs. along said line to a stake; thence north 775 vrs. to Brays bayou, or the place of beginning.

" 'The six acres herein conveyed to be located in the above named 31 acres wherever Daisy G. Starks may choose.

" 'To have and to hold the above-described premises, together with all and singular the rights and appurtenances thereto in anywise belonging unto the said Daisy Starks her heirs and assigns forever. And I do hereby bind myself, my heirs, executors and administrators, to warrant and forever defend, all and singular the said premises unto the said Daisy Starks, her heirs and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof.

" 'Witness my hand at home this 20th day of October, 1913.

　　　　　　　　　　　　her
" 'Lucindy X Grant.
　　　　　　　　　　　mark
"''Signed and delivered in the presence of
　　―――――.'
　――――.'

"Attached to the deed appeared the certificate of acknowledgment of F. P. Crow, notary public for Harris county, Tex., dated October 20, 1913.

"I find, from the testimony and the appearance of the deed itself, that the portions of the deed above underscored were inserted or altered after the deed had been signed, acknowledged, and delivered by Lucindy Grant; and that said insertions and alterations were made by the said F. P. Crow, acting as the authorized agent of Daisy Starks and her husband, Will Starks, and with their knowledge, acquiescence, and consent, and without the knowledge, authority, consent, or acquiescence of Lucindy Grant, and that she did not afterwards know of such changes in the deed, and did not ratify and adopt the same. I further find that said changes were made in the deed subsequent to the day upon which the same was actually executed and delivered, and prior to the time when the same was filed for record by the said Crow, as the agent and upon the request of the said Daisy Starks and husband.

"I find that, at the time the deed was signed, acknowledged, and delivered by Lucindy Grant, the only designation of the grantor then contained therein was the word 'Grant' and the words '(feme sole),' after the word 'Grant,' were inserted therein by the said Crow, as aforesaid, after the execution and delivery of said deed, as was also the language '(and love and affection)' in the portion of the deed reciting the consideration, and also the language 'the six acres herein conveyed to be located in the above named 31 acres wherever Daisy G. Starks may choose,' making up the final portion of the description of the land as contained in the deed offered.

"I find that the deed as executed, acknowledged, and delivered by Lucindy Grant described the name of the person paying the consideration as 'Daisy Starr' and that after the execution, acknowledgment, and delivery thereof the initial 'G' was inserted between the given name and the surname, and the last 'R' in the surname changed to 'K' and an 'S' added thereto, and that in the habendum clause and the warranty clause, the deed as executed and delivered had the name of the grantee as 'Daisy Starr,' and that the same in each location was, after the execution, acknowledgment, and delivery thereof changed by the said Crow, making the letter 'Y' out of the letters 'ie' in the given name, and changing the last 'r' in the surname to 'K' and adding an 's' thereto. I find that said deed was written with ink into an ordinary printed form of a warranty deed, and that the changes and additions above stated were all made with the same ink at the same time, and with different ink from that used in the original draft of said deed, and at a different time.

"I find that, at the time of, and in the execution of, said original instrument as originally drafted, the said Lucindy Grant intended to convey to Daisy Starks an undivided interest of 6 acres in and to the tract of 31 acres of land particularly described by metes and bounds in said deed, without the right to select said 6 acres; and I also find, from the evidence offered at this trial, that at the time of the execution thereof she was mentally capable of executing said deed and understanding the nature and effect thereof; and that after executing said deed she at once delivered it to said Crow as the recognized agent of Daisy Starks.

"I find that Daisy Starks, claiming under said deed, chose and elected to take, and designated the 6 acres of land particularly described in paragraph 4 of plaintiff's first amended original petition."

Appellant's assignments of error and the propositions thereunder challenge each and all of the material fact findings upon which the trial court's ruling excluding from evidence the deed from Lucindy Grant to Daisy Starks is based, on the ground that they are not supported by any evidence. After a careful examination of the record, we feel constrained to agree with appellant that there is no evidence to sustain the finding that the deed was materially altered after its execution and delivery by Lucindy Grant and without her consent.

The original deed has been sent up with the record and alterations appearing on its face are as follows: There is a change in the spell-

ing of the name Daisie to Daisy. This alteration is apparent in three instances where the name appears in the deed, once in the conveying, habendum, and warranty clauses of the deed, respectively. In the clause of the deed reciting the payment of the consideration, the letter G appears to have been inserted between the name Daisie and Starks after they were written. The name Starks, wherever it appears in the deed, appears to have first been written "Starr" and the last "r" changed to a "k" and the letter "s" added. These are the only alterations appearing upon the face of the deed. There is absolutely nothing on the face of the deed to indicate that the clause giving the grantee the right to select the six acres of land has been changed or altered in any respect, except as to the change in the grantee's name before pointed out, nor is there any indication from the writing or the color of the ink that this clause was not in the deed as it was originally written.

The notary who wrote the deed and took the acknowledgment of the grantor thereto testified, in substance, that appellant requested him to prepare the deed and take it to Lucindy Grant for execution. In a day or two after he received this request he prepared the deed, took it to Lucindy Grant, and obtained her signature and acknowledgment thereto. When the deed was signed and acknowledged by Lucindy Grant, it was exactly as it is now written, unless it be for the change in the grantee's name from Starr to Starks. He discovered that he had written the name wrong when he read the deed to Lucindy Grant before its execution and it was then understood that it should be corrected. He could not remember definitely whether he made the correction at that time, before it was executed, and may have made it a day or two afterwards when he made his certificate of acknowledgment to the deed. After its execution and delivery by Lucindy Grant, the deed was taken by him, at appellant's request, to have it placed of record. It was not filed for record until 28 days after its execution, the explanation given for this delay being that he was so engaged in other business that he neglected to have it sooner recorded. The deed was in his possession from the time of its execution until it was filed for record. The appellant paid him for writing the deed and taking the acknowledgment of the grantor and repaid him the recording fees.

This witness had testified at a previous hearing of this case on application for temporary injunction, about three years before the trial from which this appeal was taken. On this trial he was cross-examined on his previous testimony, and made the following statements:

"I gave this further testimony at the former hearing: 'In drawing the deed I made a mistake in the name, putting the name "Daisie Starr" instead of Starks.' I will say that is true. I also testified: 'The deed appears to have been changed from "Starr" to "Starks." This change was made by me.' I would say I gave that testimony at the former trial if I had the deed exhibited to me upon the witness stand. I think it is possible that I may have testified: 'And I am quite sure that I did it after I got back to my office, after the deed had been signed. I think it quite possible that I may have done that, but I don't now recall definitely the facts about it.' Possibly I testified: 'In reading over the deed to see if it was all right when I put my certificate of acknowledgment on it, I noticed the error in the name, and, as it was all my work, I changed it.' I now say that is probably true. I would say that I also gave this testimony at the former trial: 'Starks did not tell me to hold the deed off the record. I don't know why I held it off the record for 28 days, except that I was possibly careless and had other things to attend to.' I now say that is true. Considering the testimony you have read to me, based upon my present recollection and having it refreshed by these matters, I would say that that is probably my testimony at the former hearing in this case, and I will say that those facts are now true to the best of my impression and recollection."

He further testified (redirect examination):

"Lucindy Grant told me who the grantee in this deed was; she told me the grantee was Daisy, the girl that was there. I thought at the time when I wrote the deed that Daisy was 'Daisie Starr,' but they told me it was Daisy Starks; it was the wife of Will Starks, and she was there at the time. When I read the deed to Lucindy Grant at her house before she executed it, it read just as it reads now, except the corrections. The correction was made with reference to the name right there; that is, I mean to say, I was called to the fact that it wasn't 'Starr' but 'Starks.' I was instructed to make it Starks. The correction was simply noted and accepted there; there was no specific instructions given me in regard to it, as I know of. My impression is that the change was made in the instrument there, but I would not say positively about it; I know it was understood that it was to be made, and we spoke of it as being made 'Starks.' That is in my handwriting. As to whether it is my custom, or if I ever changed an instrument after the maker had signed it, my understanding has always been when it was understood the change was to be made, you could then make it as going that way; that is, one who acknowledges the deed—takes the acknowledgment—when it was understood between all the parties there that a certain change is to be made, that that change could be made. My understanding is that, when all parties agree that a change should be made in an instrument, the notary can make it afterwards, before he recorded the acknowledgment, or rather before he filled out the acknowledgment; in other words, it has been my idea that you can go back to your office and made the change in accordance with the instructions of the parties; I might be wrong about that. I made the change

in accordance with the instructions of the parties."

Recross-examination:

"The mistake was called to my attention at that time, and I, of course, stated to them, they being about as ignorant as I was along those lines, that I would make the change. As to whether or not anybody 'authorized' me to make the change, it is just owing to whether you call that authorizing or not, when they tell you that the name is wrong, and I would say I would change it—there is the question, you can make out of what you may. That is all occurred. I got no further authority except that conversation and correction of the name there that I have just stated."

The findings of the trial court that Lucindy Grant intended to convey six acres out of the thirty-one acres to Daisy Starks, and that she had mental capacity to execute the deed, and understood the nature and effect thereof, and did execute and deliver it to the notary, Crow, for Daisy Starks, are fully sustained by the evidence, and were not excepted to by the appellee.

Upon this state of the record and the evidence before set out, we do not think the trial court was authorized to conclude that there had been such material alterations in the deed after its execution as to render it inadmissible in evidence. As we have before stated, the only alterations appearing upon the face of the deed are the changes in the name of the grantee, above pointed out. The change in the spelling of the name Daisie and the insertion of the middle initial G at one place in the deed were clearly immaterial alterations. If changing the name Starr to Starks, when the uncontradicted evidence shows that Daisy Starks was the name of the person to whom the grantor intended to convey the land, and there is no evidence of the existence of any person by the name of Daisy Starr, should be regarded as a material alteration, we think the uncontradicted evidence shows that this alteration was made with the knowledge and consent of the grantor and could not therefore affect the validity of the deed, notwithstanding it may have been made after the deed was signed, acknowledged, and delivered by the grantor.

The common-law rule in regard to the admissibility in evidence of instruments which appear to have been altered after they were first written has been uniformly applied by the courts of this state. The general rule and the reason therefor is thus stated in the early case of Miller v. Alexander, 13 Tex. 497:

"If, on the production of such an instrument, it appears to have been altered, it is incumbent on the party offering it in evidence to explain this appearance. For the instrument is supposed to have been intended to express the agreement of the parties, solemnly adopted as such, and attested by the signature of the party

engaging to perform it. Any alteration, therefore, which makes it speak a language different in effect from that which it originally spoke, destroys its identity, and its legal virtue, for it is no longer the agreement which the parties undertook to perform. An agreement to be binding must have the assent of both the contracting parties; and, consequently, cannot have legal validity if altered by one party without the concurrence of the other. Hence, every alteration on the face of the instrument which evidences the agreement renders it suspicious; and this suspicion the party claiming under it, is ordinarily held bound to remove."

Some of the many other cases discussing and applying the rule are Park v. Glover, 23 Tex. 471; Bowser v. Cole, 74 Tex. 222, 11 S. W. 1131; Collins v. Ball, 82 Tex. 269, 17 S. W. 614, 27 Am. St. Rep. 877; Bullock v. Sprowls, 93 Tex. 188, 54 S. W. 661, 47 L. R. A. 326, 77 Am. St. Rep. 849; Kalteyer v. Mitchell (Tex. Civ. App.) 110 S. W. 462.

[2] In all of these cases in which the rule has been applied, the alteration was material in that it changed the legal effect of the instrument, either in its terms or the relation of the parties thereto, and was fraudulently made without the consent of the parties. The conditions under which the rule should be applied are thus accurately stated in Cyc. vol. 2, p. 177:

"As a general rule the effect of any alleged change in an instrument depends, first, upon the character of the change—that is, whether it is material or immaterial. Any change in an instrument which causes it to speak a different language in legal effect from that which it originally spoke—which changes the legal identity or character of the instrument, either in its terms or the relation of the parties to it —is a material change or technical alteration, and such a change will invalidate the instrument against all parties not consenting to the change. Not only will an alteration vitiate the instrument as between the immediate parties, but also as against bona fide holder or indorsee without notice, as the latter can acquire no right or title other than that of the person under whom he claims."

And the reason for the rule is thus stated:

"The rule that a material alteration avoids the instrument is founded upon two reasons: First (and what is said to be the true foundation of the doctrine), that no man shall be permitted, on grounds of public policy, to take the chance of committing a fraud without running any risk of loss by the event when it is detected; and, second, because the identity of the instrument is destroyed, and to hold one under such circumstances would be to make for him a contract to which he never agreed, which is especially true in the case of a surety."

It seems clear to us that the rule as defined and limited by the authorities above cited cannot, under the facts of this case, be successfully invoked to sustain the ruling of the trial court in excluding from evidence

the deed from Lucindy Grant to Daisy Starks. We very much doubt whether changing the name of the grantee from Starr to Starks was, under the facts of this case, such a material alteration of the instrument as to render it inadmissible in evidence, independent of whether the change was authorized by the grantor. It is not clear to us that such an alteration changed the legal identity or character of the instrument, either in its terms, or the relation of the parties to the instrument. The instrument before the alteration was a complete and perfect deed of conveyance of the land described therein from Lucindy Grant to a named grantee. The undisputed evidence shows that Daisy Starks was the grantee intended to be named by the grantor. No such person as Daisy Starr is shown to have been in existence and the writing of the name Starr instead of Starks was merely a mistake of the scribe who prepared the deed. Under the decision of our Supreme Court, if the change had not made it would have been competent to have shown by parol that Daisy Starks was in fact the grantee in the deed. This being so, it would seem that the notary, after he discovered his mistake, might have corrected it, whether so authorized by the grantor or not, without destroying the validity of the deed or rendering it inadmissible in evidence.

[3] The purpose of the rule is to prevent fraud and imposition, and it should not be invoked to defeat a title honestly and fairly acquired and free from any suspicion of fraud. But be this as it may, when the undisputed evidence, as in this case, goes further and shows that the alteration was made, if not by express direction of the grantor, at least with the understanding that it would be done, we think that beyond question such alteration was immaterial.

Appellee relies upon the cases of Park v. Glover and Bowser v. Cole, supra, to sustain the ruling of the court. We think both of these cases are distinguishable from the instant case. In the Park Case the transfer of title to land in which the name of the grantee was inserted after its execution and delivery was, at the time of its execution, a transfer in blank, and was therefore, as pointed out by the Supreme Court, a void instrument, having no legal effect, and the insertion of the name of a grantee after its execution gave it a distinct legal effect and must be regarded as a material change. It is not shown who inserted the name of W. A. Park as the grantee, nor that the grantor authorized its insertion or understood that it would be inserted in the instrument after its execution.

The alteration in the Bowser Case was clearly material, as additional property to that included in the mortgage by the mortgagor was inserted by the mortgagee after the execution of the instrument. The point in the case was not whether the alteration was material, but whether the mortgagee, in a suit to foreclose the mortgage, could recover the amount due upon the properties originally included in the mortgage, and the Supreme Court held that in the form in which the suit was brought, he was not entitled to recover anything. The question decided in that case would be material in this case upon the right of appellant, under his pleadings, to recover an undivided interest of six acres in the 31 acres, if there was any evidence to sustain the trial court's finding that the clause giving Daisy Starks the right to select the six acres was inserted in the deed after its execution. Our conclusion that there is no evidence to sustain this finding of the trial court eliminates this question of pleading.

[4] These conclusions require a reversal of the judgment of the trial court. Ordinarily, when a plaintiff's right to recover depends upon wrongfully excluded evidence, upon a reversal of the judgment against him by the appellate court, that court would not be authorized to render judgment in his favor upon the excluded evidence. But when, as in this case, the evidence excluded is a deed showing title in the plaintiff which was introduced in evidence in the court below and thereafter erroneously excluded from the evidence, the deed being properly before this court and there being nothing in the record to indicate that the case was not fully developed upon all its issues upon the trial in the court below, there can be no reason for remanding the case for retrial.

For the reasons stated, we are of opinion that the judgment should be reversed and judgment here rendered for the appellant; and it has been so ordered.

Reversed and rendered.