**Opinion issued March 8, 2018**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-16-00896-CV

————————————

**AIC MANAGEMENT COMPANY, Appellant**

**V.**

**AT&T MOBILITY, LLC, REDDY GREENSBROOK, LTD., ARETE REAL ESTATE & DEVELOPMENT, AND MUDUGANTI REDDY, Appellees**

---

**On Appeal from the 129th District Court**
**Harris County, Texas**
**Trial Court Case No. 2011-42761**

---

## MEMORANDUM OPINION

Appellant, AIC Management Company ("AIC"), challenges the trial court's judgment, entered after a bench trial, in favor of appellees, AT&T Mobility, LLC ("AT&T"), Reddy Greensbrook, Ltd. ("Greensbrook"), Arete Real Estate & Development ("Arete"), and Muduganti Reddy ("Reddy"). In six issues, AIC

contends that the trial court erred in determining contested fact issues at a proceeding under Texas Rule of Civil Procedure 248,[1] holding that AIC's correction deed is invalid and that Greensbrook is the legal owner of the real property at issue, granting a summary judgment in favor of AT&T on its limitations defense, and awarding attorney's fees.

We reverse and render in part and affirm in part.

## Background

In 2011, AT&T filed a petition in interpleader,[2] alleging that, in July 1991, its predecessor-in-interest, Houston Cellular Telephone Company ("Houston Cellular"), entered into a lease agreement (the "Lease") with Texas Commerce Bank ("TCB"). Pursuant to the Lease, Houston Cellular leased from TCB, for $100.00 per month and for an initial term of five months and renewable for four successive five-year periods, real property in north Harris County, on which Houston Cellular constructed and operated a cellular telephone antenna and transmission site (the "cell tower"). The Lease describes the property as a "50' by 75' parcel of land located in the southwest corner of Block 3 Unrestricted, Reserve 'C,' 18.72 acres, which is

---

[1]   *See* TEX. R. CIV. P. 248.

[2]   "An interpleader is a suit to determine a right to property held by a disinterested third party who is in doubt about ownership and who, therefore, deposits the property with the trial court to permit interested parties to litigate ownership, letting the court decide who is entitled to the funds and thereby avoiding the peril of deciding ownership itself." *FCLT Loans Asset Corp. v. FirstCity Fin. Corp.*, 294 S.W.3d 661, 666 (Tex. App.—Houston [1st Dist.] 2009, no pet.).

located at the southeast corner of Richey Road and West Hardy Road," and includes an easement along the southern boundary of the 18.72-acre parcel. The Lease also provides that the "rights under this Lease shall bind and inure to the benefit of Landlord, and Landlord's heirs, successors, and assigns, and Tenant, and Tenant's heirs, successors, and assigns."

According to the record, in October 1991, TCB partially re-platted the 18.72-acre tract, creating a 0.6036-acre parcel, "Restricted Reserve A," Block 1, out of Northview Park, Section Two, recorded in the Harris County real property records at File N457142. It is this parcel, "Restricted Reserve A," that is the subject of the Lease and this lawsuit.

In 1994, TCB sold to Raymond G. Tiedje, several tracts of real property, including the 18.72-acre tract and "all of Restricted Reserve A, Block 1 of a partial replat of Northview Park - Section Two, a subdivision of record under Harris County Clerk's File (H.C.C.F.) Number N457142, Harris County, Texas."

In 1995, Tiedje sold to Houston North View Park, L.L.C. ("HNVP") several tracts, again including the 18.72-acre tract and "all of Restricted Reserve A." The deed reflects that it was recorded in the Harris County real property records at clerk's file R256533, with a property description including Restricted Reserve A, at film code number 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.

In August 1997, the 280th District Court of Harris County, in trial court case number 96-06869, signed a judgment in rem against HNVP, and in favor of Harris County Municipal Utility District #221 ("HCMUD") and Aldine Independent School District ("Aldine ISD"), among others, for delinquent taxes for tax years 1995 to 1996. The trial court ordered that several tracts or parcels of land belonging to HNVP be sold at a constable's sale to satisfy the judgment, including the 18.72-acre tract and all of Restricted Reserve A, by reference to the deed from Tiedje to HNVP, as follows: "18.72 acres of land, more or less, out of Abstract 982, Harris County, Texas, being more particularly described on Exhibit A to a special warranty deed filed in the official deed records of Harris County, Texas under clerk's file R256533 (at film code No. 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) reference to such instrument and the legal description contained therein made herein for all purposes as if repeated verbatim."

On January 27, 1998, the Constable, Precinct No. 4, of Harris County, Texas, pursuant to the trial court's August 11, 1997 judgment and on behalf of HCMUD and Aldine ISD, and others, posted for public sale the 18.72-acre tract, including Restricted Reserve A. The constable's deed states that the property was "struck off" to HCMUD "for the use and benefit of itself and all other taxing units that established tax liens in Cause No. 96-06869."

On May 28, 1998, HCMUD sold, "on behalf of itself and all taxing units that established tax liens on the property" in cause number 96-06869, the 18.72 acres,

4

including Restricted Reserve A, to George R. Eeds. This sale was made subject to certain provisions of the Texas Tax Code.[3]

In June 1998, Eeds conveyed the 18.72-acre tract, including Restricted Reserve A, back to HNVP. HNVP immediately conveyed the same property to Kuturu Reddy, Trustee. And, Reddy immediately conveyed the same property to Greensbrook.

AT&T, in its interpleader petition, alleged that it became the successor-in-interest to Houston Cellular with respect to the cell tower and the Lease. From 1998 to 2011, AT&T made its lease payments to Greensbrook. In 2010, Greensbrook and AT&T renewed the Lease.

AT&T further alleged that, in April 2011, AIC appeared, claiming that it had purchased Restricted Reserve A in September 2000. AIC claimed a right to AT&T's payments under the Lease for the preceding eleven years, and it threatened to terminate the Lease and deny AT&T access to its cell tower. AT&T requested to interplead its Lease payments into the registry of the court. AT&T also brought a declaratory judgment action, seeking a declaration "as to the owner of the premises" and who, Greensbrook or AIC, was entitled to the Lease payments. In the event that

---

[3]     *See* TEX. TAX CODE ANN. §§ 34.05 (including, "If property is sold to a taxing unit that is a party to the judgment, the taxing unit may sell the property at any time by public or private sale," subject to any right of redemption of former owner); 34.21 (right of redemption) (West 2015).

5

the trial court deemed AIC to be the owner, AT&T requested a release of any liability to AIC for Lease payments prior to April 2011.

AIC brought a counterclaim against AT&T for breach of contract, asserting that AT&T had breached the Lease by not making its payments to AIC. AIC sought to recoup AT&T's Lease payments from September 2000 to 2011. AIC also brought a cross-claim against Greensbrook, Reddy, and Arete, asserting that each was jointly and severally liable for falsely claiming that Greensbrook was the owner of the leased premises and diverting Lease payments that belonged to AIC.

AIC brought a "Declaratory Judgment Claim" against AT&T and Greensbrook, seeking a declaration that AIC's Correction Deed was valid, that it vested superior title in Restricted Reserve A to AIC, and that Greensbrook and AT&T had no legal or equitable interest in the property. AIC also sought its attorney's fees. AIC asserted that, in January 1998, "Aldine ISD and others" sued HNVP for delinquent taxes, and the final judgment was signed in November 1998. The trial court, in its judgment, ordered the sale of Restricted Reserve A, the 0.6036-acre leased premises at issue and the property was sold at a constable's sale on September 5, 2000. On May 3, 2005, the Harris County, Precinct 4, Constable executed a Deed Under Order of Sale in Tax Suits, naming Aldine ISD as grantee. On September 29, 2005, however, the constable executed a "Correction Deed," removing Aldine ISD and naming AIC as grantee.

6

AIC further brought a claim for unjust enrichment against AT&T and Greensbrook, seeking to recover all Lease payments that AT&T had made to Greensbrook after September 2000. AIC also asserted that, in the event that the trial court declared Greensbrook to be the owner of the property, it was entitled to judgment against AT&T and Greensbrook for AIC's funds paid to purchase the property at the September 2000 tax sale and for property taxes.

Greensbrook asserted that AIC's claims were barred by adverse possession. Greensbrook also brought a counterclaim against AIC for trespass to try title and an action to quiet title and remove a cloud, i.e., AIC's Correction Deed.

The trial court ordered that AT&T deposit into the registry of the court the disputed funds and all additional disputed amounts each month thereafter until a final judgment was signed. The trial court further ordered that the case continue on the merits between AIC and Greensbrook to determine their respective rights to the disputed funds and a determination of all claims by all parties.

AT&T then moved for a summary judgment on AIC's breach-of-contract claim, asserting that AIC was barred by limitations from recovering any Lease payments made prior to August 11, 2007, i.e., more than four years before AIC filed its counterclaim. The trial court granted summary judgment in favor of AT&T on its limitations defense.

The trial court denied Greensbrook's and AIC's motions for a summary judgment on the validity of AIC's correction deed and title issues.

A week prior to trial, AT&T filed a "Rule 248 Motion Regarding Legal Determination of the Validity of Claimants' Deeds." AT&T noted that Greensbrook had demanded a jury trial and that Rule 248 required that the trial court determine all questions of law before the jury trial commenced. Greensbrook claimed title to the property through its 1998 Special Warranty Deed, and AIC claimed title to the property through its 2005 Correction Deed. AT&T asserted that neither deed was ambiguous, and it requested that the trial court rule on the "legal validity" of AIC's and Greensbrook's deeds, through which they each asserted an interest in the interpleaded funds and the Lease, and strike the claim of any deed that "cannot transfer an interest in real property." AT&T asserted that "the scope of the trial may be limited or the need for a trial may be eliminated in its entirety." To its motion, AT&T attached Greensbrook's deed, AIC's Correction Deed, the original 2005 deed to Aldine ISD.

AIC responded, "The matters which may be addressed by Rule 248 are matters such as motions in limine, the admission of uncontested evidence and the like. The Court cannot rule on the validity of a deed that is not in evidence."

At the hearing on AT&T's "Rule 248 Motion," AIC withdrew its opposition and asked the trial court to rule on the validity of its Correction Deed. AIC asserted

8

that "the deeds are before the Court as exhibits to AT&T's motion." The trial court then considered the deeds and heard argument of the parties, as discussed below. The trial court signed an "Order Construing the AIC Correction Deed Pursuant to Rule 248," in which it found that AIC's Correction Deed "was subject to section 5.029[4] of the Texas Property Code concerning Material Corrections and Correction Instruments" and did not substantially comply with the requirement that a correction instrument be executed by each party to the recorded original instrument. The trial court held that AIC's Correction Deed was invalid as a matter of law.

Subsequently, at the beginning of trial, Greensbrook waived its demand for a jury trial, and the parties agreed to try the case to the court. Greensbrook non-suited its trespass-to-try-title claim and AIC informed the trial court that it "ha[d] not brought a trespass-to-try-title claim." The trial court denied AIC's motion for leave to amend its pleadings to assert an equitable title claim.

The trial court then admitted into evidence, inter alia, a copy of the Lease and copies of the deeds, discussed above, from each party and heard argument. The trial court ruled that AIC's declaratory judgment claim was resolved by its finding that AIC's Correction Deed was invalid as a matter of law, that "Greensbrook has superior title to AIC," and that AT&T did not breach a contract with AIC. At a

---

4     *See* TEX. PROP. CODE ANN. § 5.029 (West 2014)

subsequent hearing, counsel for Greensbrook testified regarding its attorney's fees as to AIC's declaratory judgment claim.

The trial court, in its final judgment, after noting that it had previously found that AIC's Correction Deed was invalid, declared that Greensbrook is the "legal owner" of the property and ordered that AIC's Correction Deed not cloud Greensbrook's title. With respect to AIC's breach-of-contract claim, the trial court held that AIC take nothing. With respect to AIC's claim for unjust enrichment, the trial court awarded AIC, out of the court registry, damages in the amount of $39,795.82. The trial court awarded the balance of the funds in the registry to Greensbrook. The trial court further awarded Greensbrook attorney's fees in the amount of $65,000.00 through trial, $15,000.00 through appeal, $7,500.00 through a petition to the supreme court, and $10,000.00 for briefing and argument in the supreme court.[5]

### Validity of the Correction Deed

In its sixth issue, AIC argues that the trial court erred by determining the validity of its deed, which it characterizes as a "contested factual issue," at a proceeding under Rule of Civil Procedure 248. *See* TEX. R. CIV. P. 248. In its third issue, AIC asserts that the trial court erred by holding that its Correction Deed is

---

[5] The trial court did not, despite request by AIC, file findings of fact and conclusions of law. AIC does not, however, complain on appeal.

invalid.  In its second issue, AIC argues that the trial court erred by "invalidating a deed to Aldine ISD."

### 1.  *Rule 248 Proceeding*

AIC asserts that "immediately prior to the scheduled jury trial, AT&T filed a Rule 248 motion on a single issue—the validity of AIC's correction deed."  AIC asserts that the trial court was "misdirected" to consider the validity of AIC's Correction Deed before considering the "entire chain of title."

A trial court has inherent power to control the resolution of cases on its docket and is granted wide discretion to conduct trial as it deems appropriate.  *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 240 (Tex. 2001); *Bohls v. Oakes*, 75 S.W.3d 473, 476 (Tex. App.—San Antonio 2002, pet. denied).  Rule 248 provides: "When a jury trial has been demanded, questions of law . . . and other unresolved pending matters shall, as far as practicable, be heard and determined by the court before the trial commences. . . ."  TEX. R. CIV. P. 248.  "The construction of an unambiguous deed is a question of law for the court."  *Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991).

Here, AT&T filed a "Rule 248 Motion Regarding Legal Determination of the Validity of Claimants' Deeds," asserting that the "trial of this interpleader dispute, as well as certain subsidiary claims," was set for the following week.  AT&T requested that the trial court rule on the "legal validity" of AIC's and Greensbrook's

11

deeds and strike the claim of any deed that "cannot transfer an interest in real property." AT&T asserted that neither deed was ambiguous and, with respect to AIC's Correction Deed, the issue presented was whether it complied with the requirements under the Texas Property Code, discussed below, that a correction instrument be executed by each party to the recorded original instrument. AT&T noted that both AIC and Greensbrook had each previously, through respective motions for summary judgment, asserted that it was entitled to judgment as a matter of law on its claim of title to the property and that there existed no genuine issues of material fact.

The record of the hearing on AT&T's "Rule 248 Motion" reflects that AIC similarly requested that the trial court determine the validity of its deed as a matter of law:

| | |
|---|---|
| [AT&T]: | . . . . The Court has heard summary judgment motions from both of the parties and the most recent of which was AIC's motion regarding the correction deed. During that hearing the Court made some comments about whether or not that correction deed met the statute for correction deeds and whether it contained the signatures it needed . . . . |
| THE COURT: | . . . . This was AIC's[?] |
| [AT&T]: | Yes, Your Honor. And so in light of the fact that we are set for trial and because of the scope of the trial really hinges on whether or not AIC's deed . . . is a valid deed— |
| THE COURT: | Well, it's either—it's either valid or not, right? |

| | |
|---|---|
| [AT&T]: | Exactly right. And so we wanted to bring that to the Court's attention. AT&T doesn't take a position on whether or not it's valid, . . . but we want the Court to rule on it before the trial begins. |
| [AIC]: | . . . . And the idea of having a ruling on the validity of the deeds in question I think would be helpful for the parties in trying the case and could abbreviate the trial. What I'm concerned about is the state of the record on which the Court's ruling would be based should it find, for example, AIC's deed to be either valid or invalid. |
| | We have presented many number of exhibits in our motion for summary judgment in order to establish through the chain of title that the constable's deed was for the property on which the AT&T tower is situated so that we would have a clear record and show that our deed was—involved that property. That's the biggest thing that I care about on a ruling on the validity or invalidity is to make sure that the record is clear that that deed pertains to the realty upon which AT&T's cell tower is situated and that is made the subject of the lease into which AT&T had entered. That's all I care about, Judge. |
| THE COURT: | But I'm not sure I quite understand what you're saying. If the Court is going to make a legal determination regarding the validity of a specific deed, like a corrected deed, I'm looking—and without making any other ancillary rulings, chain of title or who owns the property, that kind of thing, but I—if you give me the deed, apply whatever sections of the property code I need to apply, I can tell you right then and there it's material, not material, it complies, doesn't comply and it's a good deed, bad deed, right? |
| [AIC]: | I think so. |

. . . .

13

> . . . . And it doesn't really matter what the state of the record is on the predicate transactions. It is just is that deed a valid deed or invalid deed.
>
> THE COURT: Right and I'm not—
>
> [AIC]: And thinking through that with your assistance, Judge, I think that makes sense, and I'm okay with that.
>
> . . . .
>
> I agree that the Court can rule on whether or not the deed is a valid or invalid deed as a matter of law. I think the deeds are before the Court as exhibits to AT&T's motion, and I'll withdraw the opposition that AIC had to that motion and ask that the Court rule on the validity or invalidity of the deeds that are attached to AT&T's motion.

Thus, the record shows that, not only did AIC not object to the trial court making a ruling on the issue of the validity of its deed, but AIC affirmatively requested a ruling from the trial court on the issue. Accordingly, the issue is waived. *See* TEX. R. APP. P. 33.1(a) (requiring that complaints be made in trial court as prerequisite for appellate review); *see also Tittizer v. Union Gas Corp.*, 171 S.W.3d 857, 861 (Tex. 2005) (litigants precluded from requesting that trial court rule on issue and then complaining on appeal that trial court erred by making ruling); *Sentinel Integrity Sols., Inc. v. Mistras Grp., Inc.*, 414 S.W.3d 911, 919–20 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (under invited error doctrine, party cannot complain on appeal about action by trial court that party requested); *see, e.g.*, *Rodriguez v. JPMorgan Chase Bank, N.A.*, 04-14-00342-CV, 2015 WL 3772110, at

14

\*6 (Tex. App.—San Antonio June 17, 2015, pet. denied) (mem. op.) (although appellant initially objected to trial court ruling on appellee's Rule 248 motion, transcript of hearing on motion showed appellant similarly requested that trial court determine issue prior to trial, and both parties agreed determination of limitations defense involved only question of law and was potentially dispositive of case).

AIC complains that the trial court, "[i]n essence," treated AT&T's "Rule 248 motion as a motion for summary judgment without the procedural protections." The record reflects, however, that the trial court treated AT&T's motion, not as a summary-judgment motion, but as a request for a determination of a question of law prior to trial. At the pre-trial hearing, AIC agreed that the issue of the validity of its correction deed involved only a question of law. Nothing in the record reflects that the trial court treated AT&T's motion as a motion for summary judgment or prevented AIC from presenting argument or evidence to support its position. The trial court's written order and final judgment also reflect that the trial court acted pursuant to Rule 248. As requested by both parties, the trial court ruled on a specific question of law. *See Rodriguez*, 2015 WL 3772110, at \*7 (holding trial court did not treat Rule 248 motion as motion for summary judgment).

We hold that AIC waived its sixth issue.

15

**2.** *Validity of the Correction Deed*

AIC next argues that the trial court erred in holding that its Correction Deed is invalid because its Correction Deed "substantially complies" with Texas Property Code sections 5.028 "or" 5.029. *See* TEX. PROP. CODE ANN. § 5.028–.029 (West 2014).

We review issues involving statutory interpretation de novo. *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010); *Tanya L. McCabe Trust v. Ranger Energy LLC*, 531 S.W.3d 783, 794 (Tex. App.—Houston [1st Dist.] 2016, pet. denied). Our primary objective is to give effect to the intent of the Legislature, as it has been expressed by the plain meaning of the text, "unless a different meaning is supplied by legislative definition or is apparent from the context, or the plain meaning leads to absurd results." *Tanya L. McCabe Trust*, 531 S.W.3d at 794.

The Property Code authorizes the correction of an ambiguity or error in a recorded original instrument of conveyance to transfer real property or an interest in real property. *See* TEX. PROP. CODE ANN. § 5.027. Section 5.028, governing "nonmaterial" corrections, provides:

> (a) A person who has personal knowledge of facts relevant to the correction of a recorded original instrument of conveyance may prepare or execute a correction instrument to make a nonmaterial change that results from a clerical error, including:

16

(1) a correction of an inaccurate or incorrect element in a legal description, such as a distance, angle, direction . . . ; or

(2) an addition, correction, or clarification of:

    (A) a party's name, including the spelling of a name, a first or middle name or initial, a suffix, an alternate name by which a party is known, or a description of an entity as a corporation, company, or other type of organization;

    (B) a party's marital status;

    (C) the date on which the conveyance was executed;

    (D) the recording data for an instrument referenced in the correction instrument; or

    (E) a fact relating to the acknowledgment or authentication.

. . . .

(b) A person who executes a correction instrument under this section may execute a correction instrument that provides an acknowledgment or authentication that is required and was not included in the recorded original instrument of conveyance.

(c) A person who executes a correction instrument under this section shall disclose in the instrument the basis for the person's personal knowledge of the facts relevant to the correction of the recorded original instrument of conveyance.

(d) A person who executes a correction instrument under this section shall:

(1) record the instrument and evidence of notice as provided by Subdivision (2), if applicable, in each county in which the original instrument of conveyance being corrected is recorded; and

(2) if the correction instrument is not signed by each party to the recorded original instrument, send a copy of the correction instrument and notice by first class mail, e-mail, or other reasonable means to each party to the original instrument of conveyance and, if applicable, a party's heirs, successors, or assigns.

17

TEX. PROP. CODE ANN. § 5.028.

In addition to nonmaterial corrections, the parties to the original transaction, or the parties' heirs, successors, or assigns, may execute a correction instrument to make a "material" correction to the recorded original instrument of conveyance, "including" a correction to:

    (1)    add:

        (A)    a buyer's disclaimer of an interest in the real property that is the subject of the original instrument of conveyance;

        (B)    a mortgagee's consent or subordination to a recorded document executed by the mortgagee or an heir, successor, or assign of the mortgagee; or

        (C)    land to a conveyance that correctly conveys other land;

    (2)    remove land from a conveyance that correctly conveys other land; or

    (3)    accurately identify a lot or unit number or letter of property owned by the grantor that was inaccurately identified as another lot or unit number or letter of property owned by the grantor in the recorded original instrument of conveyance.

TEX. PROP. CODE ANN. § 5.029(a).

A correction instrument under section 5.029 must be:

    (1)    executed by each party to the recorded original instrument of conveyance the correction instrument is executed to correct or, if applicable, a party's heirs, successors, or assigns; and

    (2)    recorded in each county in which the original instrument of conveyance that is being corrected is recorded.

*Id.* § 5.029(b).

A correction instrument that complies with Section 5.028 or 5.029 is:

(1)     effective as of the effective date of the recorded original instrument of conveyance;

(2)     prima facie evidence of the facts stated in the correction instrument;

(3)     presumed to be true;

(4)     subject to rebuttal; and

(5)     notice to a subsequent buyer of the facts stated in the correction instrument.

*Id.* § 5.030(a).  A correction instrument replaces and is a substitute for the original instrument.  *See id*. § 5.030(b).

Here, it is undisputed that AIC's Correction Deed, which substitutes AIC as grantee, was not executed by Aldine ISD, the grantee in the original 2005 instrument.

We first note that section 5.028 provides that "clerical errors," "including an addition, correction, or clarification of a party's name, including the spelling of a name, a first or middle name or initial, a suffix, an alternate name by which a party is known, or a description of an entity as a corporation, company, or other type of organization," constitute "nonmaterial" corrections.  *See id*. § 5.028(a)(2)(A).  At issue in this case, however, is not a correction to the spelling of a party's name, but a substitution of an entirely different party as grantee.  *See, e.g*., *Jackson v. Brackins*, 409 S.W.2d 482, 484 (Tex. Civ. App.—Houston [1st Dist.] 1966, writ ref'd n.r.e.) (distinguishing between change in grantee name and change in grantee); *Starks v. Loftus*, 248 S.W. 1090, 1094 (Tex. Civ. App.—Galveston 1922, no writ) (change in

19

spelling of grantee name immaterial as undisputed evidence showed that same grantee was intended).

Although we recognize that section 5.029 does not expressly contemplate a change in a grantee to be a "material" correction within the statute, the statute employs, before its enumerated list, the term "including." *See* TEX. PROP. CODE ANN. § 5.029 ("[P]arties to the original transaction, or the parties' heirs, successors, or assigns, may execute a correction instrument to make a 'material' correction to the recorded original instrument of conveyance, 'including' a correction to: [list]."). Generally, "'[i]ncludes' and 'including' are terms of enlargement and not of limitation or exclusive enumeration, and use of the terms does not create a presumption that components not expressed are excluded." TEX. GOV'T CODE ANN. § 311.005 (West 2013) ("Code Construction Act").

More importantly, the record shows that AIC did not dispute in the trial court that the change in the grantee in this case constituted a material correction governed by section 5.029:

> THE COURT:      . . . [W]hat section of the Property Code are we talking about?
>
> . . . .
>
> [Greensbrook]:   . . . I think we're all under the assumption that a new named grantee, completely new person, would be a 5.029 correction instrument with the material correction.
>
> [AIC]:          Correct.

20

. . . .

THE COURT: Okay. So everybody is in agreement that this is a 5.029; that is, it's a material correction because we're changing who the grantee is?

[AIC]: Yes, sir.

Further, AIC did not dispute that section 5.029 requires that an instrument making a material correction be "executed by each party to the recorded original instrument of conveyance the correction instrument is executed to correct or, if applicable, a party's heirs, successors, or assigns." TEX. PROP. CODE ANN. § 5.029(b)(1).

AIC argued in the trial court, as it does so on appeal, that, notwithstanding the lack of a signature by Aldine ISD on the Correction Deed, substantial compliance with section 5.029 is sufficient. At the hearing, the following discussion took place:

THE COURT: Okay. And so—under 5.029(b) it would have needed to have been recorded by—it would need to have been executed by Hickman and Aldine ISD; right?

[Greensbrook]: That's correct, Judge.

[AIC]: Except that the Court was referred to a subsequent section in the Property Code, the number of which escapes me, where it recognizes that correction deeds that were recorded before the effective date of the statute have to, quote, substantially comply with the requirements of the material change provision. And our argument was that ours substantially complied because substantial compliance necessarily means something less than perfect compliance.

THE COURT: And I have had this discussion before.

21

. . . .

> And the problem I have is there really is no substantial compliance as it complies to that section. That isn't the same thing because how can you have—how can you deed a property to a grantee and then a subsequent deed come and—this claim that that property interest from that person without getting their assent and that be something that the law would sanction, right? Otherwise someone could sell a piece of property, go in, they get the property, and then two months later say, okay, file a correction deed and then give it to somebody else and just keep doing that over and over and it would be okay under the law because they're just correction deeds.

[AIC]: And that's what the Court pointed out at the hearing on the motion for summary judgment. And I understand the Court's feelings about it. And I think we're just ready for the Court to say yea or nay, it's valid or invalid.

THE COURT: Okay. I wanted to make sure I ran through the traps and I wasn't thinking about some other section in it or some other issue.

[AIC]: You're spot on on what this is all about.

Property Code section 5.031 states that

> A correction instrument recorded before September 1, 2011, that substantially complies with Section 5.028 or 5.029 and that purports to correct a recorded original instrument of conveyance is effective to the same extent as provided by Section 5.030 unless a court of competent jurisdiction renders a final judgment determining that the correction instrument does not substantially comply with Section 5.028 or 5.029.

TEX. PROP. CODE ANN. § 5.031. Generally, "'[s]ubstantial compliance' means that one has performed the 'essential requirements' of a statute and it 'excuse[s] those

22

deviations from the performance required by statute which do not seriously hinder the legislature's purpose in imposing the requirement.'" *U. Lawrence Boze & Assocs., P.C. v. Harris Cty. Appraisal Dist.*, 368 S.W.3d 17, 27 (Tex. App.— Houston [1st Dist.] 2011, no pet.); *see also Edwards Aquifer Auth. v. Chem. Lime Ltd.*, 291 S.W.3d 392, 403 (Tex. 2009) ("[S]ubstantial compliance with a statute means compliance with its essential requirements.").

This Court has held, however, that the requirement that each party to the recorded original instrument execute the correction deed is "essential to fulfilling the Legislature's standard for permitting a material correction" under section 5.029. *See Tanya L. McCabe Trust*, 531 S.W.3d at 794 (discussing genesis of statute and *Myrad Props. v. Lasalle*, 300 S.W.3d 746 (Tex. 2009)).

Because AIC's Correction Deed was not executed by Aldine ISD, the grantee in the original instrument, or by its successors or assigns, the Correction Deed does not comply with section 5.029, as a matter of law, and is invalid. *See Tanya L. McCabe Trust*, 531 S.W.3d at 799 (holding correction instruments that did not comply with section 5.029 to be invalid). We hold that the trial court did not err in holding that AIC's Correction Deed is invalid.

With respect to AIC's assertion that the trial court lacked "jurisdiction to declare Aldine ISD's judgment or deed void," nothing in the trial court's judgment declares void any deed held by Aldine ISD. As AIC notes in its brief, Aldine ISD is

23

not a party to this appeal. The trial court held only that AIC's Correction Deed is invalid.

We overrule AIC's second, third, and sixth issues.

Having held that AIC's Correction Deed is invalid, we do not reach AIC's fourth issue, in which it asserts that the trial court erred in granting AT&T summary judgment on its limitations defense, with respect to AIC's breach-of-contract claim based on payments allegedly owed under the Lease.

## Adjudication of Ownership

In its first issue, AIC argues that the trial court erred in determining that Greensbrook is the legal owner of the real property at issue because its ownership interest arises from a transfer during the pendency of a tax suit. Greensbrook responds that it established its title by adverse possession, as an affirmative defense to AIC's declaratory action.

"Disputes based on claims of superior title are trespass to try title actions." *Jinkins v. Jinkins*, 522 S.W.3d 771, 786 (Tex. App.—Houston [1st Dist.] 2017, no pet.); *Mid Pac Portfolio, LLC v. Welch*, No. 01-15-00404-CR, 2016 WL 828150, at *4 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (mem. op.). "A trespass to try title action is *the* method of determining title to lands, tenements, or other real property." TEX. PROP. CODE ANN. § 22.001(a) (West 2014) (emphasis added); *see Vernon v. Perrien*, 390 S.W.3d 47, 54 (Tex. App.—El Paso 2012, pet. denied)

24

(trespass to try title action is statutory and accords legal remedy). A plaintiff must prevail on the superiority of his title, and not on the weakness of his opponent's title. *Rogers v. Ricane Enters., Inc.*, 884 S.W.2d 763, 768 (Tex. 1994); *Ellis v. Buentello*, No. 01-12-00098-CV, 2012 WL 3528009, at *4 (Tex. App.—Houston [1st Dist.] Aug. 16, 2012, no pet.) (mem. op.). To maintain a trespass-to-try-title action, "the party bringing the suit must have title to the land sought to be recovered." *Ramsey v. Grizzle*, 313 S.W.3d 498, 505 (Tex. App.—Texarkana 2010, no pet.). To prevail in a trespass-to-try-title action, a plaintiff must establish (1) a regular chain of conveyances from the sovereign, (2) superior title out of a common source, (3) title by limitations, or (4) title by prior possession coupled with proof that possession was not abandoned. *Ellis*, 2012 WL 3528009, at *4. "[T]he prevailing party's remedy is title to, and possession of, the real property interest at issue." *Vernon*, 390 S.W.3d at 54.

Here, it is undisputed that neither AIC nor Greenbrook brought a trespass-to-try-title claim in the trial court. AIC did not expressly plead a trespass-to-try-title claim, and it emphasized in the trial court that it "ha[d] not brought a trespass to try title action." Although Greensbrook pleaded a trespass-to-try title claim, it non-suited its claim at trial. Instead, AIC brought a claim under the Declaratory Judgments Act ("DJA"), seeking, as pertinent here, a declaration that it has superior title to Restricted Reserve A and that Greensbrook does not have a legal or equitable

25

interest in the property. Greensbrook, in its answer, asserted that AIC's claim was barred by adverse possession.

"Generally, a trespass to try title claim is the exclusive method in Texas for adjudicating disputed claims of title to real property." *Tex. Parks & Wildlife Dep't v. Sawyer Tr.*, 354 S.W.3d 384, 389 (Tex. 2011). "The line segregating claims impacting title to property that can be brought as declaratory judgment actions from those claims impacting title that must be brought as trespass-to-try-title actions is not a clear one under current Texas law." *Jinkins*, 522 S.W.3d at 785–76 (quoting *I–10 Colony, Inc. v. Lee*, 393 S.W.3d 467, 474–75 (Tex. App.—Houston [14th Dist.] 2012, pet. denied)). "The uncertainty originates with two legislative directives that appear to overlap to some degree." *Id.* at 786. "Section 22.001(a) of the Property Code mandates that '[a] trespass to try title action is the method of determining title to lands, tenements, or other real property.'" *Id.* (quoting TEX. PROP. CODE ANN. § 22.001(a)). The DJA, however, provides that "[a] person interested under a deed, will, written contract, or other writings . . . may have determined any question of construction or validity arising under the instrument . . . and obtain a declaration of rights, status, or other legal relations thereunder." *Id.* (quoting TEX. CIV. PRAC. & REM. CODE § 37.004(a)). These statutes differ in their pleading and proof requirements, and only the DJA allows a recovery of attorney's fees. *Id.*

The Texas Supreme Court and this Court have held, however, that, "[w]hen a dispute involves a claim of superior title and the determination of possessory interests in property, it *must* be brought as a trespass-to-try-title action." *Jinkins*, 522 S.W.3d at 785 (emphasis added); *see Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 926 (Tex. 2013). "[A] litigant's couching its requested relief in terms of declaratory relief does not alter the underlying nature of the suit." *Tex. Parks & Wildlife Dept. v. Sawyer Trust*, 354 S.W.3d 384, 388 (Tex. 2011); *Jinkins*, 522 S.W.3d at 786.

The record shows that AIC sought an adjudication of title through a request for a declaratory judgment. Notwithstanding, because AIC and Greensbrook dispute title to the property, their claims fall within the category of claims required to be brought in trespass-to-try-title actions. *See Jinkins*, 522 S.W.3d at 786; *see also Coinmach*, 417 S.W.3d at 926; *I–10 Colony*, 393 S.W.3d at 474–75. This Court, and others, have held that when declaratory claims can be characterized as claims for trespass-to-try-title, we analyze the case as a trespass-to-try-title case. *See Mid Pac Portfolio, LLC*, 2016 WL 828150, at *4; *I-10 Colony, Inc.*, 393 S.W.3d at 476 ("We simply interpret the declaratory judgment request as a trespass-to-try-title action."); *see also Tex. Parks & Wildlife Dept.*, 354 S.W.3d at 388 ("[A] litigant's couching its requested relief in terms of declaratory relief does not alter the underlying nature of the suit."); *Roberson v. Odom*, 529 S.W.3d 498, 504 (Tex.

27

App.—Texarkana 2017, no pet.) ("It is well settled that Texas courts consider the substance and not the form of pleadings to determine whether an action is properly considered as a trespass to try title suit.").

Here, in response to AIC's claim of title, Greensbrook asserted in its answer, as an affirmative defense, that "AIC's claims are barred by various statutes of limitation applicable to recover real property held in peaceable and adverse possession." In its prayer, Greensbrook asked that the trial court render a take-nothing judgment against AIC. Thus, Greensbrook did not seek affirmative relief; rather, it simply asked for a denial of the relief sought by AIC. *See West v. Pugh*, No. 01-12-00133-CV, 2013 WL 3327287, at *6 (Tex. App.—Houston [1st Dist.] June 27, 2013, no pet.) (mem. op.); *My–Tech, Inc. v. Univ. of N. Tex. Health Sci. Ctr.*, 166 S.W.3d 880, 884 (Tex. App.—Dallas 2005, pet. denied) ("If there is no prayer for affirmative relief, matters that are pleaded defensively do not present a counterclaim.").

Greensbrook asserts that even if a request for affirmative relief on its claim of title to the property was not raised by its pleadings, the issue was tried by consent. A party may obtain a judgment on an unpleaded claim when it is tried by consent. TEX. R. CIV. P. 67 ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. . . ."). "Trial by consent is intended to cover the exceptional

28

case where it clearly appears from the record as a whole that the parties tried the [unpleaded] issue." *RE/MAX of Tex., Inc. v. Katar Corp.*, 961 S.W.2d 324, 328 (Tex. App.—Houston [1st Dist.] 1997, no pet.). To determine whether an unpleaded issue was tried by consent, we examine the record not for evidence of the issue, but rather for evidence of trial of the issue. *See Pickelner v. Adler*, 229 S.W.3d 516, 523 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).

Greensbrook asserts that it raised the issue of its limitations title at trial, as follows:

> However, to that end, I can show in my title that I have had title sufficient to win both by both predating or anti-dating the Reddy Greensbrook and also I show it by limitations title, which I have mentioned.

This, without more, however, does not reflect that the parties understood that the issue of adverse possession was in the case and actually tried. *See id.*

Because the record does not reflect that Greensbrook requested affirmative relief on its adverse possession claim, we hold that the trial court erred in declaring Greensbrook the legal owner of the property through adverse possession.

We sustain AIC's first issue.

Because we have sustained the error in the ruling favoring Greensbrook, we also sustain AIC's fifth issue, in which it argues that the trial court erred in awarding Greensbrook attorney's fees because such fees are barred in a trespass-to-try-title action. The recovery of attorney's fees in trespass-to-try-title actions is barred

29

because, with a limited exception for boundary disputes between adjoining properties, Property Code chapter 22 does not provide for them. *Shelton v. Kalbow*, 489 S.W.3d 32, 55 (Tex. App.—Houston [14th Dist.] 2016, pet. denied); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(c) (West 2015). Further, the Texas Supreme Court has held that, when "the trespass-to-try-title statute governs the parties' substantive claims . . . , [the plaintiff] may not proceed alternatively under the Declaratory Judgments Act to recover their attorney's fees." *Coinmach Corp.*, 417 S.W.3d at 926.

## Conclusion

We reverse the portion of the trial court's judgment declaring Greensbrook to be the legal owner of the property and render judgment striking this portion of the judgment. We further reverse the portion of the trial court's judgment awarding Greensbrook its attorney's fees and render judgment that Greensbrook take nothing on its claim for attorney's fees. We affirm the remainder of the trial court's judgment.


                                        Sherry Radack
                                        Chief Justice

Panel consists of Chief Justice Radack and Justices Higley and Bland.

30